IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANNY WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:05-00279 |
| v. ) | JUDGE HAYNES |
| ) | |
| HRRW, LLC and CRAIG HAYES ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff, Danny Watkins, a Texas citizen, filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendants HRRW, LLC, a Tennessee limited liability company and Craig Hayes, a Tennessee citizen. Plaintiff asserts claims under Tennessee common law for breach of fiduciary duty and malicious prosecution. Plaintiff's claims arise out of a state court action involving the purchase of Plaintiff's property by HRRW, LLC ("HRRW") and Hayes, Plaintiff's insurance agent and member of HRRW, LLC ("HRRW"). In essence, Plaintiff asserts a claim that without Plaintiff's knowledge, Hayes breached his fiduciary duty to Plaintiff, when he solicited, acquired and used privileged information acquired in his agent/client relationship with Plaintiff to advance a state court action against Plaintiff involving the same property. Plaintiff's malicious prosecution claim is that the Defendants lacked probable cause to initiate the state court action against him and initiated the state court action with malice. The parties proceeded with discovery.

Before the Court are Defendant HRRW's motion for summary judgment (Docket Entry No. 20) and Defendant Craig Hayes's motion for summary judgment, (Docket Entry No. 24). In

his motion, Hayes contends, in sum: (1) that he did not obtain insurance for Watkins's property in question; (2) that he did not share any information obtained from Watkins in the course of their insurance business with HRRW or its attorney until after HRRW filed its suit against Watkins; (3) that Hayes did not have any information regarding the property in question; and (4) that his actions did not constitute a breach of the duty of reasonable care that insurance agents owe to their clients under Tennessee law. To the extent, Watkins asserts a malicious prosecution claim against Hayes individually, Hayes contends that he is entitled to summary judgment for the reasons set forth in HRRW's motion for summary judgment.

In his response to Hayes's motion, Plaintiff contends that special circumstances are present to establish a fiduciary relationship between Plaintiff and Hayes and that their dealings were not at arm's length. Watkins contends that a confidential relationship existed because "Plaintiff repeatedly shared confidential and privileged information with Mr. Hayes"; (Docket Entry No. 32-1) and "Plaintiff purchased insurance coverage for certain commercial properties through Craig Hayes...[and] [t]hrough this relationship, Craig Hayes learned of the Plaintiff's property holdings and solicited information from Plaintiff which was to be held in confidence." (Docket Entry No. 1 at ¶ 7). Plaintiff insists that through disloyalty and dishonesty, Hayes breached his fiduciary duty to Plaintiff, causing injury to Plaintiff.

In its motion for summary judgment, HRRW contends, in sum: (1) that probable cause existed for the initiation and prosecution of the state court action; (2) that the state court action was based on the advice of counsel after disclosure of all facts which could be ascertained by due diligence; and (3) that the prior state court action was not instituted nor prosecuted as a result of any "malice" on the part of HRRW.

In his response to HRRW's motion, Plaintiff contends that HRRW cannot rely on an advice of counsel defense because the attorney's decision to initiate the state court action lacked necessary information. Plaintiff also asserts that even if HRRW could rely on its counsel's affidavit, a trial is necessary to resolve the issue of probable cause because HRRW's counsel's affidavit fails to explain why HRRW would have any recourse to sue for the alleged misrepresentations at the auction, where HRRW purchased the property from a third party.

For the reasons set forth below, the Court concludes that Plaintiff has failed to demonstrate the existence of a fiduciary relationship with Hayes, his insurance agent and that Plaintiff's proof does not meet the requirements of a prima facie showing of breach of fiduciary duty by Hayes. In addition, the Court concludes that the Plaintiff's proof fails to demonstrate that HRRW lacked probable cause when HRRW filed its state court action against Plaintiff for undisputed misrepresentations regarding the sale of the property.

## A. FINDING OF FACT[1]

Watkins is engaged in the buying and selling of commercial real estate in the state of Tennessee. (Docket Entry No. 34 at Response No. 3). Hayes operates an insurance agency doing business as Craig Hayes Insurance Agency that is affiliated with State Farm Insurance. (Docket Entry No. 27 at ¶ 1) From approximately 1994 to 2001, Watkins insured certain commercial

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986), app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). There are not any material factual disputes and this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

3

properties through Hayes's agency. (Docket Entry No. 34 at Response No. 4). Watkins retained Hayes as his insurance agent for six years, from 1994 to 2001, even after the initiation of the cited state court action. (Docket Entry No. 27 at ¶ 2 and Docket Entry No. 33 at ¶ 18). Hayes is also a member of HRRW, which is a limited liability company that was formed for the purpose of purchasing the property at issue. (Docket Entry No. 27 at ¶ 4). Watkins asserts that Hayes for a time he was unaware that Hayes was involved in the state court action. (Docket Entry No. 33 at ¶ 17).

Watkins owned and operated a residential trailer park (the "Property") in Sumner County, Tennessee. (Docket Entry No. 25). On April 29, 2000 the Property sold at auction to Danny Hale, the auctioneer. (Docket Entry No. 27 at ¶ 5). Neither Hayes nor members of HRRW were present at the auction and Watkins did not know that Hayes was interested in his property. (Docket Entry No. 33 at ¶ 7). Prior to closing, Hale sold the Property to HRRW, a business entity created for the purpose of purchasing the Property. (Id. at ¶ 9 and Docket Entry No. 27 at ¶ 4). Members of HRRW include Craig Hayes, Daryl Holt, Reese Legge and Jeff Reinsch. (Docket Entry No. 27 at ¶ 4).

After HRRW purchased the property, either Holt or Reinsh discovered that Watkins made certain misrepresentations regarding the Property in connection with the auction, including the number of trailers rented and the amount of rental income that the trailers and lots generated. Id. at ¶ 7. Based on these alleged misrepresentation, William Moore, Jr., HRRW's attorney, filed a civil action against Watkins in the Circuit Court for Sumner County, Tennessee on May 25, 2001. Id. at ¶ 8. Watkins did not know that HRRW filed a action against him until several months after its filing. (Docket Entry No. 33 at ¶ 17).

4

During the state court litigation, Moore became aware that Hayes worked with Watkins to obtain insurance for some of Watkins's properties. (Docket Entry No. 27 at ¶ 9). Moore asked Hayes to furnish him any documents or inform him of any instance in which Watkins made representations regarding the number of rental units on the Property or the amount of income that those units generated. Id. Because Hayes did not help Watkins obtain insurance for the Property, Hayes did not have any such information, but allowed Moore to examine his files to confirm his lack of any information regarding the Property. Id. at ¶ 10.

Watkins and Hayes continued their business relationship after the filing of the state court action. Id. at ¶ 18. After the commencement of the state court action, Hayes solicited information from Watkins regarding his financial condition and property holdings. Id. In his affidavit, Watkins asserts that Hayes used confidential information to advance the underlying state court action.

> 13. That Mr. Hayes solicited information that I would never have given to him had I known that he and H.R.R.W. had filed a lawsuit against me.
>
> 14. That the solicited information described in paragraph #13 were my property holdings and the extent of my commercial real estate income.
>
> 15. That on June 4, 2003, the defendant H.R.W. filed an amended complaint [Docket Entry No. 32-3] seeking to attach two of my rental properties including my other mobile home rental units.

(Docket Entry No. 33).

After a three day trial in the state court action, the jury returned a verdict for Watkins finding that he did not make any misrepresentations concerning the Property, its rental income or condition. (Docket Entry No. 33 at ¶ 22 and Docket Entry No. 32-4).

## B. CONCLUSIONS OF LAW

5

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity

6

for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby).

Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a</u>

<u>verdict for the party producing it, upon whom the onus of proof is imposed.</u>'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New InterNational Dictionary</u> (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

9

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'
>
> 6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'
>
> 9. The trial court no longer has the duty to search the entire record to establish

10

that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. Breach of Fiduciary Duty

Plaintiff's theory is that Hayes, as his insurance agent, owed a fiduciary duty to Plaintiff, the insured and that Hayes breached his fiduciary duty to Plaintiff. (Docket Entry No. 1). Hayes contends that he did not breach a fiduciary duty because information given to an insurance agent is not confidential and under Tennessee law, insurance agents do not have a legal duty to disclose possible conflicts between their clients' and their financial interests. (Docket Entry No. 25).

Under Tennessee law, an agent can owe a fiduciary duty to his or her principal. French v. First Union Securities, Inc., 209 F. Supp. 2d 818, 825 (M.D. Tenn. 2002).

11

> An agent is a fiduciary with respect to the matters within the scope of his agency. The very relationship implies that the principal has reposed some trust or confidence in the agent and the agent or employee is bound to the exercise of the utmost good faith, loyalty, and honesty toward his principal or employer.

Id.

As a general rule, for insurance agents, "[t]he agent of the insured owes to him the duty of obeying his instructions in the performance of his agreement or contract of agency; to use skill and care, conformably to custom and usage, in the performance of his duties; to act loyally; and to inform and to account to the insured for the administration of his agency duties." Bates v. Jim Rule Chevrolet, Inc., No 16, Tenn. App. WL 51295, at *6 (Tenn. Ct. App. Apr. 26, 1990) (citing Couch on Insurance 2d, § 25.32 (Rev. ed. 1984)). At the time of the events at issue, by statute, for insurance applications, the insurance agent was deemed an agent of the insurer, not the insured.[2] Although that statute was repealed in 2003, Tennessee common law distinguishes between an insurance agent and an insurance broker. Ebbtide Corp. v. The Traveler's Ins. Co., No. M1999-01932-COA-R3-CV, 2001 WL 856578 at *7 (Tenn.Ct.App. July 31, 2001) (quoting Glisson v. Stone, 4 Tenn. App. 71, 74-75 (1926)). The Sixth Circuit has also noted the distinction. Alverson v. American Nat'l Ins. Co., 30 Fed. App. 491, 496 (6th Cir. 2002).

Tennessee courts, however, have rejected breach of fiduciary duty claims against insurance agents in various factual circumstances. Young v. Mountain Life Ins. Co., No. 89-129-

---

[2]The former Tenn. Code Ann. § § 56-6-147 (2000) provided: every insurance agent or limited insurance representative who solicits or negotiates an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured or his beneficiary and the insurer, be regarded as the agent of the insurer and not the insured or his beneficiary. This provision shall not affect the apparent authority of an agent.

12

II, 1989 WL 147501 (Tenn.Ct.App. Dec. 8, 1989) (finding an insurance agent did not have a fiduciary duty to inform client that her husband's credit life insurance policy was not automatically renewable upon renewal of the loan); Weiss v. State Farm Fire & Cas. Co., 107 S.W.3d 503 (Tenn.Ct.App. 2001) (finding that an insurance agent had no duty to explain plaintiff's coverage or make sure she understood her policy); . Ebbtide, 2001 WL 856578 at *7-8 (declaring that the duty an insurance agent owes to his client is "the usual obligation on the part of the latter to carry out the instructions given him and faithfully discharge the trust reposed in him...").

Here, Hayes operated an independent insurance agency, but was tied to a specific insuror. HRRW is not an insurance company. Viewing the facts in a light most favorable to Watkins, as required on this type of motion, Hayes could be deemed a broker and the Hayes-Watkins relationship could give rise to a confidential or fiduciary relationship, if Plaintiff establishes that: (1) that the transaction was not an ordinary arm's length, business transaction; and (2) that the particular facts establish a confidential relationship had been established. Thompson, 404 F. Supp. 2d at 1029.

Whether the relationship between Watkins and Hayes was a confidential relationship is a question of fact. Matlock v. Simpson, 902 S.W.2d 384, 385 (Tenn. 1995) The burden of proving the existence of a confidential relationship lies with the party claiming the existence of such a relationship. Childress v. Currie, 74 S.W.3d 324, 328 (Tenn. 2002). Moreover, Plaintiff bears the burden to present sufficient facts to support a judgment that a confidential relationship existed and was breached. Rogers v. The First Nat'l Bank, No. M2004-024140-COA-R3-CV, 2006 WL 344759, at *8 (Tenn.Ct.App. Feb. 14, 2006). See also Ebbtide Corp. v. The

13

Traveler's Ins. Co., 2001 WL 856578 at *7 (Tenn.Ct.App. July 31, 2001)

For a prima facie showing of the existence of a fiduciary relationship, a plaintiff must demonstrate that he reposed confidence in the agent who exercised dominion and influence whereby the agent was to act for the plaintiff's benefit. Thompson v. American General Life and Accident Ins. Co., 404 F. Supp. 2d 1023, 1029 (M.D. Tenn. 2005).

As applied here, Watkins asserts that his relationship with Hayes was not at arm's length because (1) Hayes's solicitation and acquisition of information regarding his properties was "outside the normal business scenario" in which the insured approaches an agent; (2) that the relationship is not at arm's length because Hayes did not disclose his involvement with HRRW; and (3) the ongoing business relationship between Watkins and Hayes resulted in Watkins sharing his confidential information with Hayes.

Under Tennessee law, a transaction is deemed not to be at arm's length in the following circumstances:

> Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no confidential relation had existed.*

Lowe v. Quillen, No. 03A01-9312-CV-00420, 1994 WL 398829 at *8 (Tenn.Ct.App. July 29, 1994) (emphasis added and citing Turner v. Leathers, 232 S.W.2d 269 (Tenn. 1950)). In a word, a transaction is at arm's length if the transaction is between two unrelated parties, with equal bargaining power.

For a confidential relationship, the defendant must also exercise dominion and control

14

over the plaintiff. Rogers, 2006 WL 344759 (citing Kelly v. Allen, 558 S.W.2d 845, 848 (Tenn. 1997)). "It is not merely a relationship of mutual trust and confidence, but rather a confidential relationship is one where confidence is placed by one in the other and the recipient of that confidence is a dominant personality, with ability, because of that confidence, to exercise dominion and control over the weaker or dominated party." Id. (citing Iacometti v. Frassinelli, 494 S.W.2d 496, 499 (Tenn.Ct.App. 1973)).

The factual record does not support or suggest that as an insurance agent, Hayes exercised dominion and control over Watkins or his properties. Watkins sought Hayes's services to insure his various properties. Moreover, Hayes did not procure insurance for the Property in question, evincing that Hayes lacked the power to act on Watkins's behalf unless so instructed. The evidence reflects a relationship between experienced and independent businessmen with neither party exercising dominion over the other and each possessing equal bargaining power.

Under Tennessee law, absent an agreement, a long business relationship does not alter an insurance agent's legal obligation to a client. Quintana v. Tennessee Farmers Mutual Ins. Co., 774 S.W.2d 630 (Tenn.Ct.App. 1989). In Quintana, the plaintiff had been dealing with the same insurance agent for approximately 20 years. Despite this lengthy business relationship, the Court did not impose the additional obligation of notifying the plaintiff that his policy had been cancelled because the parties did not agree to continue the agent's responsibilities to the plaintiff after he secured the policy for plaintiff. In Quintana, the agent's obligation to the plaintiff ended when he obtained insurance for the plaintiff, despite a long relationship, because there was no agreement continuing the agent's responsibilities. If the facts in Quintana did not give rise to a special relationship between those parties, then the facts here could not establish a special

15

relationship between Watkins and Hayes so as to establish any fiduciary relationship.

As to Watkins's contention that the information provided to Hayes for the purpose of obtaining insurance coverage was confidential and created a confidential relationship, under Rogers, a fiduciary relationship does not arise simply because one party shares confidential information with the other. The information produced by Watkins contains only the addresses of certain of his properties and their assessed values, information that is available in the public record. (Docket Entry No. 32-3 at ¶¶ 19a-b). The facsimile from Hayes to Watkins cited as soliciting confidential information reads as follows: "Danny, I need the following for your umbrella policy (1) Annual Rents, (2) Number of rental units." (Docket Entry No. 32-2). Plaintiff's proof does not suggest that the purpose of this request was other than to obtain or maintain his insurance. Given the nature of the information request and that the alleged solicitation was for necessary information for the Plaintiff's "umbrella policy", the Court concludes that this information request did not involve confidential information.

Under Plaintiff's theory, any insurance agent who requests information from a client to obtain more insurance coverage could be considered a fiduciary. A Kentucky district court addressed this specific issue

> [T]he information obtained by a general insurance agent, while representing an insurance company...cannot possibly be classified as confidential...[such as] [t]he name of the insured, the character and description of the property to be insured, the amount of insurance, and the character of the policy.

In Re Chapman, 50 F.2d 252, 253 (W.D. Ky 1931). The Court concludes that an existing insurance agent's request for additional information for insurance coverage needs is not outside the normal business of an insurance agent.

16

In sum, the Court concludes a fiduciary relationship did not exist between Plaintiff and Defendant and that the Plaintiff has not met his burden to present sufficient proof for a trier of fact to find the existence of a confidential relationship. Without a fiduciary relationship, Plaintiff cannot support a judgment on his breach of fiduciary duty claim against Hayes.

## 2. Malicious Prosecution

Under Tennessee law, malicious prosecution is the use of legal process for its ostensible purposes, but without probable case. Perry v. Sharber, 803 S.W.2d 223, 225 (Tenn.Ct.App. 1990) (citing Donaldson v. Donaldson, 557 S.W.2d 60 (Tenn. 1977)). The essential elements of malicious prosecution are that: (1) a prior suit or judicial proceeding was instituted without probable cause; (2) the defendant brought such action with malice; and (3) the prior action was finally terminated in plaintiff's favor. Roberts v. Federal Express Corp., 842 S.W.2d 246, 248 (Tenn. 1992).

Plaintiff asserts that a prima facie case of malicious prosecution has been shown by: (1) HRRW's lack of probable cause to initiate the underlying proceedings; (2) HRRW's initiation of the underlying proceeding with malice; (3) the underlying judicial proceeding's termination in his favor.[3] The Plaintiff contends that HRRW had no probable cause to initiate the underlying proceedings as the Plaintiff in no way attempted to deceive HRRW or fraudulently convey property to HRRW. (Docket Entry No. 1 at ¶ 21).

Probable cause for a malicious prosecution claim differs depending upon whether the

---

[3]The Court recognizes that the underlying judicial proceeding, HRRW, LLC v. Danny Watkins, f/d/b/a Watkins & Watkins, LLC (Case No. 3:01-1535) has terminated in Watkins's favor, fulfilling the third element of the prima facie showing of malicious prosecution. (Docket Entry No. 32-4).

17

underlying action was a civil or criminal action . Morat v. State Farm Mutual Automobile Ins. Co., 949 S.W.2d 692, 695-6 (Tenn.Ct.App. 1997). For a malicious prosecution claim based on an unsuccessful civil action, as here, Tennessee law imposes a lesser burden of proof:

> We note at the outset, that while the same general rules and limitations apply to an action founded upon a civil proceeding, vis-a-vis criminal proceedings, there can be significant differences:
>
> But obviously less in the way of grounds for belief will be required to justify a reasonable man in bringing a civil, rather than a criminal suit. Sometimes this is expressed by saying that want of probable cause must be "very clearly proven" or "very palatable" or that "greater latitude" must be allowed than in a criminal case. Apparently, what is meant is merely that the instigator need not have the same degree of certainty as to the facts, or even the same belief in the soundness of his case, and that he is justified in bringing a civil action when he reasonably believes that he has a good chance of establishing it to the satisfaction of the court or jury.

Id. (citing Prosser and Keeton on Torts, 5th Ed. § 120, p.893).

In a word, "[t]he existence of probable cause does not depend on a subjective mental state [of the defendant], but instead is 'determined solely from an objective examination of the surrounding facts and circumstances." Roberts, 842 S.W.2d at 249. The appropriate inquiry then is whether, based upon objective standards, HRRW reasonably believed that Watkins made misrepresentations in connection with the Property.

The state court litigation alleged that Watkins made misrepresentations regarding the Property that was sold at auction. (Docket Entry No. 27 at ¶ 7). During the state court trial, HRRW's attorney elicited the following information from Watkins:

> Q. And what does the [closing] contract say, sir, about the auction announcement?

\* \* \*

18

> Q. "Auction announcements made day of sale are attached hereto and made part thereof." That's what it says?
>
> A. Okay.
>
> * * *
>
> Q. You heard him [Hale, at auction] talk about the water meters being paid separately, you heard him talk about they had paid the contractor to install every meter. However, it is my understanding that about five meters had not been installed. And none of that, none of that is true, is it? Is it?
>
> * * *
>
> A. Well, as far as Mr. Hale's position–
>
> * * *
>
> Q. None of the information given in the auction announcement made part of the contract concerning separate water meters was true, is it?
>
> A. Not from my standpoint. Now as far as Danny Hale's, that's his position, sir.

(Docket Entry No. 81 at pp. 28-30). Watkins and Hale attached the auction announcement to their closing contract that was signed by Watkins. Hale ultimately assigned that contract to HRRW. Id. Thus, Watkins signed a document containing statements that he agreed were untrue.

The Court concludes that the probable cause standard for malicious prosecution is separate and apart from whether there was actual wrongdoing, as alleged in the state court action at issue. Whether Watkins attempted to deceive HRRW or fraudulently convey property is immaterial. The relevant inquiry is whether HRRW could have reasonably believed that Watkins did what the state court complaint alleged. Based upon the Watkins-Hale written contract that Watkins signed and that included the terms of the auction assignment as well as Watkins's deposition testimony, the Court concludes that HRRW had reason to believe that Watkins made

19

misrepresentations regarding the Property that he sold at auction. Thus, HRRW had probable cause to file and to pursue the state court action and Plaintiff has not presented sufficient proof to support a finding of fact that Defendants lacked probable cause to initiate the state court action.

For the above-stated reasons, the Court concludes that Defendant Craig Hayes's motion for summary judgment (Docket Entry No. 24) should be granted. The Court also concludes that Defendant HRRW's motion for summary judgment (Docket Entry No. 20-1) should be granted.

An appropriate order is filed herewith.

**ENTERED** this the ___14th___ day of November, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge

20